The PEOPLE of the State of Colorado, Complainant,

v.

Jeffry L. FRY, Attorney–Respondent.

No. 94SA185.

Supreme Court of Colorado, En Banc.

June 6, 1994.

Linda Donnelly, Disciplinary Counsel, John S. Gleason, Asst. Disciplinary Counsel, Denver, for complainant.

Jeffry L. Fry, pro se.

PER CURIAM.

The respondent, Jeffry L. Fry, was charged by formal complaint with neglecting a legal matter and with aiding a nonlawyer in the unauthorized practice of law.[1] The respondent and the assistant disciplinary counsel subsequently entered into a stipulation, agreement, and conditional admission of misconduct. *See* C.R.C.P. 241.18. In the stipulation, the parties recommended the imposition of discipline in the range of a public censure to a forty-five day suspension from the practice of law. An inquiry panel of the Supreme Court Grievance Committee approved the stipulation, with the recommendation that the respondent receive a public

---

1. The respondent was admitted to the bar of this court on October 16, 1974, is registered as an attorney upon this court's official records, and is subject to the jurisdiction of this court and its grievance committee in these proceedings. C.R.C.P. 241.1(b).

censure. We accept the stipulation and the recommendation of the inquiry panel.

## I

The parties stipulated to the following facts and conclusions. On December 8, 1990, Marlon and Annabel Broxton met with the respondent's paralegal at the respondent's office. The paralegal advised the Broxtons that a Chapter 13 bankruptcy proceeding would resolve their current financial problems. The Broxtons were told that the attorney's fee was $1,000 and the filing fee was $120 for the Chapter 13. The Broxtons did not meet with the respondent on that day. A few days later, the Broxtons again met with the respondent's paralegal who advised Mr. Broxton to hide his automobile until she told him it was safe to drive it again because the Broxtons were behind on their payments. Ms. Broxton sent the respondent the filing fee.

After the Broxtons continued to receive calls from their creditors, the respondent's paralegal advised the Broxtons to prepare a note to send to their creditors giving the name of the law firm and telling the creditors to contact the paralegal. Ms. Broxton sent the respondent $400 toward the outstanding attorney's fee and asked the paralegal to notify the Broxton's home mortgagee and Ford Motor Company of the impending bankruptcy proceedings. In February 1991, the paralegal contacted Mr. Broxton and asked him to sign the bankruptcy documents. Ms. Broxton asked the paralegal how to make their house payments outside of the Chapter 13 plan.

The voluntary bankruptcy petition was filed on February 21, 1991 in the United States Bankruptcy Court, and on March 11 the proposed plan and schedules were filed. The Chapter 13 statement reflected that Mr. Broxton was unemployed, but indicated, incorrectly, that he was receiving unemployment benefits.

After the bank holding the mortgage initiated foreclosure proceedings on the Broxton's home, the respondent's paralegal wrote to the bank in April 1991 advising them of the bankruptcy proceedings.

Neither the respondent nor the Broxtons attended a scheduled meeting of the creditors in early April 1991, and only Mr. Broxton went to the rescheduled meeting later that month. Mr. Broxton agreed to go forward without counsel and testified that he was unemployed and had no income. When the bankruptcy trustee determined that there was a discrepancy in the pleadings regarding Mr. Broxton's income, Broxton called the respondent's paralegal and was told that the paralegal did not know what the discrepancy was. Up to this point, the respondent still had not seen the Broxtons, and, in fact, there is no evidence that the Broxtons ever personally met the respondent during the course of the representation.

The bank holding the mortgage on the Broxtons' home objected to the proposed plan and filed a motion to dismiss. The respondent filed an untimely motion to confirm the plan on the same day that the bankruptcy trustee filed an objection to confirming the plan. The respondent did not respond to the trustee's objections. He appeared for a hearing set in June 1991, however, when the court denied confirmation and ordered that amended documents be filed within fifteen days or the proceeding would be dismissed.

The respondent failed to reply to the bank's motion for relief from the automatic stay. After Mr. Broxton sent the respondent a coupon book which showed that their mortgage payments had increased during the pendency of the bankruptcy proceeding, the respondent called Broxton and told him to get receipts for mortgage payments. The respondent later informed Broxton that the bankruptcy case had to be converted to a Chapter 7 and that the Broxtons would lose their home.

The motion to convert to a Chapter 7 bankruptcy was filed in July 1991. The bankruptcy court subsequently entered an order of conversion, but also granted the bank relief from the automatic stay. The respondent did not file the Chapter 7 amended schedules on time and the case was dismissed in September 1991. The respondent took no further action on behalf of the Broxtons. Moreover, the respondent did not re-

turn any of the $520 paid by the Broxtons when they requested a refund.[2]

The respondent has stipulated that his failure to supervise his paralegal resulted in the paralegal engaging in the unauthorized practice of law. The respondent essentially allowed the paralegal to handle the bankruptcy proceeding from the beginning to its admittedly "regrettable end." He therefore violated DR 3–101(A) (a lawyer shall not aid a nonlawyer in the unauthorized practice of law). In addition, the respondent's lack of involvement in the bankruptcy proceeding and his failures to attend scheduled meetings and timely file pleadings and responses constituted the neglect of a legal matter, contrary to DR 6–101(A)(3) (a lawyer shall not neglect a legal matter entrusted to the lawyer).

## II

In approving the stipulation, the inquiry panel unanimously recommended that the respondent be publicly censured. The assistant disciplinary counsel has suggested, however, that a short period of suspension is appropriate. The American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) (ABA *Standards*), provide that in the absence of aggravating or mitigating factors, public censure "is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes injury or potential injury to a client." ABA *Standards* 4.43. Moreover, public censure "is generally appropriate when a lawyer negligently engages in conduct that is a violation of a duty owed to the profession, and causes injury or

potential injury to a client, the public, or the legal system." *Id.* at 7.3.

The assistant disciplinary counsel indicates that the Broxton case was apparently an aberration, and that the respondent's "conduct was atypical when compared to other cases." The respondent states that as a result of this matter he has changed his procedures to ensure that the misconduct will not be repeated. We note that the respondent has not been previously disciplined in nearly twenty years of practice. *Id.* at 9.32(a) (the absence of a prior disciplinary record is a mitigating factor). The respondent has also cooperated in these proceedings, *id.* at 9.32(e), and has demonstrated remorse, *id.* at 9.32(*l*). Taking these factors into account, we accept the stipulation, agreement, and conditional admission of misconduct, and the inquiry panel's recommendation. However, we point out that two members of the court would have imposed a more severe sanction.

## III

It is hereby ordered that Jeffry L. Fry be publicly censured. It is further ordered that Fry pay the costs of this proceeding in the amount of $715.46 within thirty days after the announcement of this opinion to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 920–S, Dominion Plaza, Denver, Colorado 80202.

---

**2.** As part of the stipulation, the respondent paid the Broxtons $660, which includes the $520 fee,

plus interest from January 1991 and long distance toll charges.